# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3216

_____

John T. Anderson,                          *
                                           *
           Appellant,                      *
                                           *    Appeal from the United States
      v.                                   *    District Court for the
                                           *    District of Minnesota.
U.S. Bancorp, a Delaware corporation;      *
U.S. Bancorp Middle Management             *
Change In Control Severance                *
Pay Program; U.S. Bancorp Severance        *
Administration Committee                   *
                                           *
           Appellees.                      *

_____

Submitted: February 13, 2007
Filed: April 24, 2007

_____

Before RILEY, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Appellant, John T. Anderson, appeals from the order of the district court[1] granting summary judgment in favor of U.S. Bancorp, U.S. Bancorp Middle Management Change in Control Severance Pay Program and the U.S. Bancorp Severance Administration Committee ("the Committee"), with respect to Anderson's

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

claim for severance benefits under the U.S. Bancorp Middle Management Change in Control Severance Pay Program ("the Plan") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104, 1132(a)(1)(B). The district court found that the Committee's determination that Anderson was discharged for cause from his position of employment with U.S. Bancorp and thus was not eligible for severance benefits was not an abuse of discretion. We affirm.

## I.

The factual setting for the present action is succinctly summarized in this Court's opinion in a related case, Johnson v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program, 424 F.3d 734, 736 (8th Cir. 2005):

> Around the time of [Anderson's] termination, U.S. Bancorp was involved in a merger with Firstar Corporation. U.S. Bancorp, in an effort to retain a number of valued employees in the face of the uncertainty caused by the pending merger, offered certain of them a severance plan (the "Plan") providing for severance pay in the event they were terminated as a result of the merger. The Plan provided that employees terminated for "Cause" would not receive severance pay under the Plan. Cause was defined in relevant part as follows:
>
> [G]ross and willful misconduct during the course of employment ... including, but not limited to, theft, assault, battery, malicious destruction of property, arson, sabotage, embezzlement, harassment, acts or omissions which violate the Employer's rules or policies (such as breaches of confidentiality), or other conduct which demonstrates a willful or reckless disregard of the interests of the Employer or its Affiliates ... Circumstances constituting Cause shall be determined in the sole discretion of [U.S. Bancorp].
> Employees who were terminated without cause within twenty-four months of the merger were eligible for severance payments of up to the equivalent of 104 weeks' salary.

Anderson was a long time employee of U.S. Bank, a subsidiary of U.S. Bancorp, and was a participant in the Plan. Anderson was employed as a lead financial analyst in the Consumer Banking and Payment Services division of U.S. Bank. His supervisor was Mark Fields. A separate division of U.S. Bank, the Business Line Reporting & Planning Division, was headed by Kathy Ashcraft. Ashcraft's subordinates included Lynn Sato, Jason Albeck, and Burcin Iz.

In 2002, following the U.S. Bancorp/Firstar merger, Anderson had conversations with Iz and Albeck hinting that Anderson was privy to information as to personnel changes and modification of responsibilities in both the division in which Anderson worked and Ashcraft's division. These comments were reported to Ashcraft who became concerned because Anderson's comments implied that he indeed possessed knowledge of Ashcraft's confidential, planned personnel changes within her division. Ashcraft suspected that such information had been improperly obtained from her individual computer files, specifically an organization chart contained in a folder in the Corporate Analysis and Planning ("CAP") drive of the U.S. Bank document management system. The CAP drive of the U.S. Bank document management system included personal folders for Ashcraft and other employees that were labeled with the employee's name. Under the U.S. Bank system, such folders were not password protected or otherwise secure and could be accessed by certain other U.S. Bank employees, including Anderson.

Ashcraft notified Jenny Morgan, an employee in the Human Resources Division, who instituted an investigation. The Information Security Department examined Ashcraft's computer files and was able to determine the last individual to access each of Ashcraft's personal files. These included: John Anderson who last accessed the 2002 Consolidated Salary Reconciliation File (the "salary file"), Nancy Johnson who last accessed a 2002 Performance Goals File and other personal files, and, Lynn Sato, who last accessed Ashcraft's Final Merit and Incentive File.

On April 19, 2002, Morgan called Anderson and left a voicemail message advising that she "needed to talk to him about the files that had been inappropriately accessed in the Ashcraft folder." Anderson returned the call later that day. According to Morgan's handwritten notes of the conversation, when asked if the file had anything to do with Anderson's normal business and transactions, Anderson responded "no." When asked why he accessed the file, he responded "just tried to see if I could access - did & then close (sic) right away." Anderson told Morgan that he did not talk to anyone about the information contained in the salary file. Morgan's notes were transcribed later producing a version of the conversation which included the following:

Q: Does the information that you accessed have anything to do with your normal course of business or anything that you would have needed to access in a project you were working on?

A: No, there are other files that are used for what I do, but none of these. (The files in the Ashcraft folder).

Q: Why did you access this file?

A: Just tried to see if I could access it. I did and then closed it right away.

Q: Did you copy/forward/print this information or talk to anyone about what you accessed?

A: No, I didn't talk to anyone about it.

Anderson later told Morgan that he would have answered differently if he had known that he was going to be terminated for accessing the document.

Ashcraft and Morgan concluded that Anderson had violated company policies by accessing Ashcraft's file. U.S. Bancorp's Computer and Information Security

Policy provides: "all of your computer access is on a need-to-know basis and is limited to the information required to perform your job." U.S. Bancorp's confidentiality policy provides: "The use of any information stemming from your employment shall be restricted to that which is absolutely necessary for the legitimate and proper business purposes of U.S. Bancorp." On April 3, 2002, Anderson was tendered a notice of termination by Morgan, which stated as the basis of the termination: "You have engaged in unethical conduct by violating U.S. Bancorp Code of Conduct."

On June 21, 2002, Anderson submitted, through counsel, a letter making a claim for severance benefits alleging that he was wrongfully terminated based on an inadequate investigation by Morgan. Anderson denied accessing any file containing confidential and proprietary information or that his actions constituted "cause" as defined in the Plan. He stated that "he had conversations with employees regarding only well known integration issues." Anderson admitted that he had accessed the salary file in the Ashcraft folder, but stated that the file was "indirectly related to one of his job responsibilities."

The Severance Administration Committee consisted of DeeAnn Neri, a senior vice president in the Human Resources Department, Edward Caillier, a human resources employee; and, Diane Thoromsgaard, a senior manager in the trust division. Thoromsgaard was not present at the meeting during which Anderson's initial claim was denied.

The Committee considered Anderson's attorney's letter of June 21, 2002, as a claim for benefits under the Plan, and denied Anderson's claim on August 26, 2002, by letter. The Committee concluded that the termination was for cause within the meaning of the Plan because: (1) Anderson's access to the salary file in the Ashcraft folder was without authorization or a business purpose and Anderson had admitted the same; (2) Anderson disclosed employee information obtained from the accessed file

to others in violation of the U.S. Bancorp confidentiality policy; (3) Anderson was not truthful in his statements to Morgan that he did not disclose accessed information to others; and (4) Anderson's conduct violated policies requiring integrity and proper use of company resources.

Anderson appealed the Committee's decision by letter from his attorney to the Committee dated October 11, 2002. In this appeal letter Anderson admitted accessing the salary file but stated that he had a business purpose for doing so and denied that the salary file contained individual salary figures. He stated that he made a mistake in initially stating to Morgan that he did not need access to the salary file to perform his job duties. Anderson also denied disclosing the acquired information to anyone else.

In this letter, Anderson requested that the Committee provide him with documents including his entire personnel file, documents as to other similarly situated employees who had been terminated or denied severance benefits during the preceding five years, a copy of the salary file accessed by Anderson, and documents showing the salary file to be classified. Anderson also requested permission to speak to specified U.S. Bank employees.

Anderson supplemented his appeal by way of an additional letter on February 4, 2003, after U.S. Bancorp provided Anderson the opportunity to interview employees. In this letter, Anderson submitted to the Committee certain factual stipulations which he had elicited from U.S. Bank. He further submitted argument with respect to the Committee's findings that Anderson had improperly disclosed information, that he had accessed an Ashcraft file containing individual salary data, and that Anderson's accessing the salary file was sufficient cause for termination.

The Committee denied Anderson's appeal by letter dated March 21, 2003. The Committee conceded that there was insufficient evidence to conclude that Anderson

accessed the organizational chart file or that he had shared confidential information, as the Committee had previously concluded. However, the Committee upheld its finding that Anderson was terminated for cause based upon his unauthorized access of the salary file. The Committee noted in support of its conclusion: Anderson's statements to Morgan that he had no business reason for accessing the file and that he did so simply to see if he could access the file; his statement that he would have answered differently if he had known that termination would follow; and his inability to "describe with specificity the business purpose he claims he had to access the document."

U.S. Bank employee Nancy Johnson was also terminated for accessing the Ashcraft files without permission and without a business purpose. She brought an ERISA action against the Committee and prevailed before the district court. On appeal, this Court found that the Committee reasonably interpreted "cause" to include knowing and willful violations of U.S. Bancorp's computer security policy and that the Committee reasonably exercised its discretion in applying uncertain terms of the Plan. Johnson, 424 F.3d at 739. The Court also held that substantial evidence supported the Committee's determination that Johnson's actions in accessing Ashcraft's files constituted a knowing and willful violation of the computer security policy. Id.

## II.

Anderson brought an action in the district court pursuant to 29 U.S.C. §§ 1132(a)(1)(B), alleging that the Committee's action constituted an abuse of discretion and a breach of its fiduciary duty. The district court found that the Committee had discretionary authority under the terms of the Plan and that, accordingly, an abuse of discretion standard applies. Applying this standard, the district court concluded that the Committee did not abuse its discretion in finding that Anderson accessed the computer file in question without permission and without a business purpose. In this

regard, the Court noted that Anderson did not assert that he had a business purpose for accessing the file until his appearance before the Committee, despite earlier questioning by Morgan.

In light of Johnson the district court found that "the Committee's interpretation of the term 'cause' in the Plan as including Anderson's access of Ashcraft's file, was reasonable." The district court noted that the Plan includes as gross or willful misconduct "acts or omissions which violate the Employer's rules or policies (such as breaches of confidentiality)." Accordingly, the district court found that "because Anderson had violated the Computer and Information Security policy, his termination was for cause, was reasonable and therefore not an abuse of discretion." The district court granted summary judgment for the Committee.

III.

This court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party. Smith v. United TV, Inc., 474 F.3d 1033, 1035 (8th Cir. 2007). "We also review de novo the district court's determination of the appropriate standard of review under ERISA." Phillips-Foster v. UNUM Life Ins. Co. of Am., 302 F.3d 785, 794 (8th Cir. 2002).

As pertinent to this appeal, Anderson asserted in the district court a claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1104 and a claim under 29 U.S.C. § 1132(a)(1)(B) seeking judicial review of the denial of benefits under the ERISA plan. The district court correctly dismissed the breach of fiduciary duty claim as "29 U.S.C. § 1104 cannot independently support a claim of fiduciary duty. Section 1132(a) provides the exclusive causes of action for claims by ERISA plan participants and beneficiaries seeking to enforce rights under an ERISA plan." Sahulka v. Lucent Techs., Inc., 206 F.3d 763, 768 n.9 (8th Cir. 2000) (internal citation omitted).

An administrator's decision is reviewed for an abuse of discretion where the plan in question gives the administrator "discretionary authority to determine eligibility for benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Pralutsky v. Metro. Life Ins. Co., 435 F.3d 833, 837 (8th Cir. 2006) ("Where the plan reserves discretionary authority to the plan administrator, we apply a deferential standard of review, considering whether the administrator abused its discretion."). The parties agree that under the Plan, U.S. Bancorp has discretionary authority to determine eligibility.

> U.S. Bancorp's Plan gives the Committee full discretion to "interpret and administer the terms and conditions of the Plan, decide all questions concerning the eligibility of any persons to participate in the Plan, [and] grant or deny benefits under the Plan," (Appellant's App. at 35), so the district court was required to review the Committee's interpretation of the Plan for abuse of discretion. See Firestone, 489 U.S. at 115; King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (en banc).

Johnson, 424 F.3d at 738.

Nevertheless, Anderson contends that a less deferential standard should have been applied by the district court in this case.

> A plan administrator's decision will be afforded less deference if a claimant presents "material probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to [the claimant]." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). A plaintiff must also "show that the conflict or procedural irregularity has 'some connection to the substantive decision reached.'" Id. at 1161 (quoting Buttram v. Cent. States, S.E. & S.W. Area Health & Welfare Fund, 76 F.3d 896, 901 (8th Cir. 1996)).

The need to show a serious breach of fiduciary duty "presents a considerable hurdle for plaintiffs." Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 588 n.9 (8th Cir. 1999) (citations and quotations omitted). In order to prevail the claimant must offer evidence which causes "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Id., at 589 (quoting Layes v. Mead Corp., 132 F3d 1246, 1250 (8th Cir. 1998)).

Phillips-Foster, 302 F.3d at 795. When these two tests are satisfied the court will apply a "sliding scale" approach, under which, "'the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity.'" Id. (quoting Woo, 144 F.3d at 1162).

In this case, Anderson argues that both a "palpable conflict of interest" was present as well as procedural irregularities. Anderson asserts that the conflict of interest was two-fold. First, a conflict of interest was presented by virtue of the fact that U.S. Bancorp would pay any severance benefits awarded, thus the fund is self funded, and, second, the Committee included employees of the Human Resources department of U.S. Bank, the department which had, at the least, approved Anderson's firing.

We have recognized that "when an entity funds a plan and is also the plan administrator there is a rebuttable presumption of a palpable conflict of interest," Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1197 (8th Cir. 2002), and, in this case, the Committee has not articulated any "ameliorating circumstances" to rebut this presumption. See Schatz v. Mut. of Omaha Ins. Co., 220 F.3d 944, 948 (8th Cir. 2000).

Anderson speculates that since Committee members worked in the U.S. Bank Human Resources department they would be reluctant to find that no cause existed for Anderson's termination, an action which was presumably approved by that

department, thus creating a conflict of interest. However, we know of no authority which would support Anderson's contention that a "palpable" conflict of interest was created by this situation and Anderson provides no proof that the relationship had a tangible or perceptible impact upon the impartiality of the members of the Committee. We believe that the mere fact of the cited employment relationship is not sufficient to support a finding of a conflict of interest. See Brandis v. Kaiser Aluminum & Chem. Corp., 47 F.3d 947, 950 (8th Cir. 1995) (employee can serve a dual role as employee and plan fiduciary) (citing 29 U.S.C. § 1108(c)(3)); see also Barnhart v. UNUM Life Ins. Co., 179 F.3d 583, 588 (8th Cir. 1999) ("ERISA itself contemplated the use of fiduciaries who might not be entirely neutral"). Further, the Committee members dual status does not present the type of personal conflict of interest which has been found to warrant consideration of less deferential review. See, e.g., Armstrong v. Aetna Life Ins. Co., 128 F.3d 1263, 1265 (8th Cir. 1997) (claim reviewers paid incentives and bonuses based upon criteria that included "claim savings").

As to procedural irregularities, Anderson asserts that the Committee failed to engage in a meaningful dialogue with Anderson, seek additional information from Anderson, and specify for Anderson what information would be adequate to secure benefits.

We find that the district court's determination that no serious procedural irregularity existed is supported by the record. Similarly, and in line with this finding, we conclude that any conflict of interest created by U.S. Bancorp funding the severance plan administered by a committee composed of its employees did not cause a "serious breach of the plan administrator's fiduciary duty." See Woo, 144 F.3d at 1160; see also Barnhart, 179 F.3d at 589 (to show serious breach of administrator's fiduciary duty caused by a conflict of interest, conflict of interest must be shown to have a connection with the substantive decision reached).

-11-

Every employee benefit plan shall provide understandable written notice to a participant whose claim has been denied setting forth the specific reasons for the denial and afford reasonable opportunity for a full and fair review by the fiduciary of the decision denying the claim. See 29 U.S.C. § 1133. After consideration of Anderson's claim for severance benefits, the Committee indeed provided written notice setting forth the basis for the denial of the claim. Further, the notice advised Anderson as to the procedure to be followed in order to appeal the decision. Anderson availed himself of the appeal opportunity. He was represented by counsel throughout and was repeatedly permitted to present evidence to the Committee in support of his claim. Anderson was furnished with all documents requested as well as information as to terminations and denials of severance benefits by U.S. Bank over the five year period specified by Anderson. Anderson, through his attorney, was afforded the opportunity to interview U.S. Bank employees, per his request. Further, there is no indication in the record that any affidavit, written statement, document, or other item proffered by Anderson to the Committee was refused and the Committee's appeal decision indicates that it considered all submissions.

Anderson points to the failure of the Committee to specify, for Anderson's benefit, what information could be submitted which would cause the Committee to sustain his appeal. However, Anderson was clearly aware of the fact at issue: whether he had a legitimate business reason to warrant his accessing Ashcraft's salary reconciliation file. Anderson attempted to convince the Committee that his admitted action was required in order for him to "perform his job." Notably, Anderson was never prevented from presenting to the Committee the statement of his supervisor or his own statement specifying the particular project in which he was engaged, which necessitated his accessing the 2002 salary reconciliation file. However, Anderson did not do so. Significantly, the Committee, after considering submissions provided through Anderson's counsel, reversed itself as to three of the four original grounds upon which Anderson's claim was denied.

-12-

Mere disagreement with the Committee's decision is not enough. See Tillery, 280 F.3d at 1197 ("It is not enough simply to show the plan administrator did not act in the sole interest of the claimant. The plan administrator's fiduciary duties extend to everyone covered by the plan, and an administrator who fails properly to investigate a claim breaches its fiduciary duty to all beneficiaries by granting benefits to unqualified claimants.").

We conclude that Anderson has failed to show that a breach of the Committee's fiduciary duty occurred. See Woo, 144 F.3d at 1160. The circumstances of this case are dissimilar to those circumstances where we have found either a serious procedural irregularity or a serious breach of the plan administrator's fiduciary duty. Janssen v. Minneapolis Auto Dealers Benefit Fund, 447 F.3d 1109, 1113 (8th Cir. 2006) (no meaningful review by plan trustees where decision was reached without adequate information and Plan failed to explain to claimant the plan provisions upon which its decision was based); Harden v. Am. Express Fin. Corp., 384 F.3d 498, 499-500 (8th Cir. 2004) (plan administrator misled claimant as to records which were part of the administrative record being considered); see Tillery, 280 F.3d at 1196 (plan administrator's failure to provide timely notice of the denial of benefits recognized as a serious procedural irregularity); Morgan v. Contractors, Laborers, Teamsters & Eng'rs Pension Plan, 287 F.3d 716, 722-23 (8th Cir. 2002) (trustees of pension plan violated plan provisions by withholding relevant information from claimant prior to appeal hearing; trustees denied claim based upon their own "preconceptions and personal observations").

Under the circumstances of this case, we find that there exists no "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim," which would warrant a less deferential standard of review. Barnhart, 179 F.3d at 589 (quoting Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998)). Accordingly, we find that the district court did not err in reviewing the Committee's decision under an abuse of discretion standard.

IV.

Anderson contends that the Committee abused its discretion by withholding severance benefits from him. Under the abuse of discretion standard "we consider whether the administrator abused its discretion – that is, whether its interpretation of the plan was reasonable, and whether its decision was supported by substantial evidence." Pralutsky, 435 F.3d at 838. Substantial evidence is "more than a scintilla but less than a preponderance." Schatz, 220 F.3d at 949. "If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997). "We do not, however, substitute our own weighing of the evidence for that of the administrator." Farley v. Arkansas Blue Cross Blue Shield, 147 F.3d 774, 777 (8th Cir. 1998). In this review, we consider only the evidence that was before the Committee when the claim was denied. Id.

"The Plan provided that employees terminated for 'Cause' would not receive severance pay under the Plan." Johnson, 424 F.3d at 736. This court has already determined that the Committee could reasonably interpret "Cause" to include:

> "violations of U.S. Bancorp's policies forbidding an employee to 'access data that you are not authorized to access,' and requiring an employee to '[e]nsure that all of your computer access is on a need-to-know basis and is limited to the information required to perform your job,' at least where such violations are knowing and willful."

Id., at 739.

Accordingly, the issue before the Committee was whether Anderson had knowingly and willfully violated U.S. Bancorp policy by accessing the salary file without permission or an adequate job related reason. The Committee's decision that

Anderson knowingly and willfully violated these policies is supported by substantial evidence.

When first asked about his accessing of the file, Anderson made statements to Morgan that could be reasonably construed as admitting that he had accessed the file without authorization and without a job related purpose. Morgan's notes reflect that Anderson told her that he opened the file simply to see if he could do so. He later told Morgan that he would have answered differently if he had known that it was going to "lead to this."

Although Anderson submitted to the Committee that he was mistaken when he initially denied having a business reason for accessing the file, he never identified for the Committee's benefit the project in which he was engaged that would have required access to the file. As in Johnson it was reasonable for the Committee to take into account Anderson's admissions and his failure to assert a lack of knowledge as a defense in concluding that he acted knowingly and willfully, as opposed to unintentionally, in accessing the file. See id. at 739-40.

In summary, the Committee considered the results of the investigation ordered by Ashcraft, but also afforded Anderson ample opportunity to present additional information. The Committee complied with Anderson's requests for documents, information, and access to employees. Through the claim and appeal process, Anderson conceded that he had deliberately accessed the 2002 salary reconciliation file, although he had asserted that he had a legitimate need to do so. The Committee conducted a full and fair review, and its finding that Anderson was terminated for cause is supported by substantial evidence.

V.

For the foregoing reasons, the judgment of the district court is affirmed.

_____

-15-